J-S48019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEXANDER RAMOS-PACHECO | |
| Appellant | No. 482 MDA 2017 |

Appeal from the Judgment of Sentence imposed February 1, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0005002-2014

BEFORE:  OTT, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 09, 2017**

Appellant Alexander Ramos-Pacheco appeals from the judgment of sentence the Court of Common Pleas of Lancaster County imposed on February 1, 2017.  Appellant argues the sentencing court abused its discretion by failing to account for certain mitigating factors.[1] We disagree. Accordingly, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's challenge involves the discretionary aspects of his sentence. **See**, **e.g.**, **Commonwealth v. Johnson**, 961 A.2d 877, 880 (Pa. Super. 2008).  Our standard for reviewing challenges to the discretionary aspects of a sentence is well-established.  **See**, **e.g.**, **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010):

*(Footnote Continued Next Page)*

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).

Assuming all the requirements above mentioned are met, we will review the question under an abuse of discretion standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 820 A.2d 703 (Pa. 2003)).

The factual and procedural background are not at issue here. Briefly, Appellant entered a guilty plea to three counts of simple assault, aggravated assault, use of electronic incapacitation device, terroristic threats, and stalking, in connection with multiple incidents involving Ms. Heather Orlando ("Victim") over an extended period of time. Appellant was sentenced to an aggregate sentence of incarceration of not less than 13 years nor more than 30 years.[2]

Appellant argues the sentencing court's failure to weigh more favorably some mitigating factors (*i.e.*, his young age, the absence of a significant adult criminal history, his mild mental retardation, some other unidentified "mental health" issues, and low education) resulted in a manifestly excessive sentence. Appellant's Brief at 8. We disagree.

The circumstances noted above, all of them, were addressed in the Pre-Sentence Investigation Report, which the sentencing court consulted before sentencing, and/or were addressed at the sentencing hearing. Thus, the sentencing court fully considered the above circumstances, but not as

---

[2] Specifically, Appellant was sentenced to the following terms of incarceration: count 1, simple assault, 6 months to 2 years; count 2, aggravated assault, 8 years to 20 years; count 3, use of electronic incapacitation device, 2½ to 5 years; count 4, terroristic threats, 6 months to 2 years; count 5, simple assault: 6 months to 2 years; count 6, simple assault, 6 months to 2 years; and, count 7, stalking, 2½ to 5 years. The sentences imposed on counts 2, 3, and 7 were made consecutive to one another, whereas the sentences on all other counts were made concurrent. Trial Court Opinion, 4/11/17, at 2.

favorably as Appellant was hoping. In other words, Appellant is merely dissatisfied with the way the sentencing court handled the mitigating circumstances. It is well-established, however, that mere dissatisfaction with a sentence is not enough to trigger our jurisdiction. **Moury**, 992 A.2d at 175 ("court['s] refus[al] to weigh the proposed mitigating factors as [a]ppellant wished, absent more, does not raise a substantial question.").

Even if we were to find otherwise, Appellant, in essence, is merely asking us to reweigh the mitigating circumstances and substitute our judgment for that of the sentencing court. We cannot do it. **See**, **e.g.**, **Commonwealth v. Brown**, 741 A.2d 726, 735 (Pa. Super. 1999), *appeal denied,* 790 A.2d 1013 (Pa. 2001) ("[W]hen reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime.") (citation omitted).

Furthermore, to the extent Appellant raised a reviewable question, we find it lacks merit for the reasons stated by the sentencing court in its comprehensive 15-page opinion. **See** Trial Court Opinion, 4/11/17, at 7-15.[3] As mentioned above, the sentencing court addressed, *inter alia*, all

_____

[3] We direct that a copy of the trial court's April 11, 2017 opinion be attached to any future filings in this case.

mitigating factors raised by Appellant, although not as favorably as Appellant had wished. *Id.* at 8-9. The sentencing court also considered: (i) the gravity of the offenses, *id.* at 9; (ii) the impact of offenses on Victim, *id.* at 9-10; (iii) Appellant's comments at sentencing, which the sentencing court described as "rambling," "show[ing] no remorse, but rather an indifference to the crimes he committed," *id.* at 11; and (iv) Appellant's rehabilitative needs ("there was little to indicate he had made any attempt to change his lifestyle since committing crimes starting at the age of fourteen." *Id.* at 12). The sentencing court also identified specific aggravating circumstances supporting a sentence above the standard range of the guidelines, *id.* at 12-13, and justified the imposition of consecutive sentences in light of "the significant amount of brutal crimes committed by Appellant over a period of years," *id.* at 15, "lack of remorse", *id.*, Appellant's criminal history, and Appellant's "poor prospects for treatment or rehabilitation." *Id.* Accordingly, we conclude the sentencing court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2017

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA  :
                              :     482 MDA 2017
            vs.               :
                              :     No: CP-36-CR-0005002-2014
ALEXANDER RAMOS-PACHECO       :

### PA R.A.P. 1925 OPINION

BY TOTARO, J.

On October 1, 2014, Detective Randell Zook of the Lancaster City Bureau of Police filed a police criminal complaint alleging that Alexander Ramos-Pacheco ("Appellant") had engaged in a pattern of physical abuse against Heather Orlando ("victim") over an extended period of time. *See* Police Criminal Complaint and Affidavit of Probable Cause.

Thereafter, the district attorney filed a criminal information charging Appellant with: (count 1) aggravated assault for using a stun gun 20-30 times to deliver an electric shock to the victim, causing scars; (count 2) aggravated assault for causing the victim to black out by placing a belt around her neck and choking her; (count 3) use or possession of electronic incapacitation device for using a stun gun 20-30 times on the victim; (count 4) terroristic threats for repeatedly threatening to kill the victim and her children; (count 5) simple assault for putting a handgun to the victim's head and threatening to kill her; (count 6) simple assault for hitting the victim multiple times a day over a period of three years; and (count 7) stalking for repeatedly engaging in the course of conduct referenced in counts one through six above, which placed the victim in substantial emotional distress and caused her bodily injury.[1] *See* Information.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(1), 908.1(a)(1), 2706(a)(1), 2701(a)(3), 2701(a)(1), and 2709.1(a)(2), respectively.

During jury selection on November 14, 2016, Appellant decided to discontinue his trial and plead guilty. (Notes of Testimony, Guilty Plea, at 50-52) (hereinafter "N.T.G.P."). More specifically, Appellant pleaded guilty to the charges as filed on counts 2, 4, 5, 6, and 7, as well as the reduced charge of simple assault on count 1 and a reduced grading on the charge of use or possession of electronic incapacitation device on count 3. *Id.* at 50-72. Sentencing was deferred pending the completion of a pre-sentence investigation report ("PSI"). *Id.* at 51, 72.

On February 1, 2017, Appellant was sentenced as follows: (count 1) simple assault: 6 months to 2 years in the state correctional institution ("SCI"); (count 2) aggravated assault: 8 to 20 years SCI; (count 3) use of electronic incapacitation device: 2½ to 5 years SCI; (count 4) terroristic threats: 6 months to 2 years SCI; (count 5) simple assault: 6 months to 2 years SCI; (count 6) simple assault: 6 months to 2 years SCI; and (count 7) stalking: 2½ to 5 years SCI. (Notes of Testimony, Sentencing, at 30-31) (hereinafter "N.T.S.").[2] The sentences imposed on counts 2, 3, and 7 were made consecutive to one another, while the sentences on all other counts were made concurrent. *Id.* at 31. Therefore, the aggregate sentence called for incarceration in SCI for a period of not less than 13 years nor more than 30 years. *Id.*

On February 2, 2017, Appellant filed a Post-Sentence Motion to Reconsider Sentence. After the Commonwealth filed a response in opposition, the court entered an order denying said motion. *See* 3/7/17 Order. On March 16, 2017, Appellant timely filed a Notice of Appeal to the

---

[2] The Sentencing Guidelines Worksheet listed the following recommended standard range sentences: (count 1) simple assault: RS-6 months; (count 2) aggravated assault: 30-42 months (+12 months); (count 3) use of electronic incapacitation device: RS-9 months (+ 3 months); (count 4) terroristic threats: RS-6 months; (count 5) simple assault: RS-6 months; (count 6) simple assault: RS-6 months; (count 7) stalking: RS-9 months (+3 months). *See* Guidelines Worksheet. As such, the minimum sentences imposed on counts 1, 4, 5, and 6 were within the standard range of the sentencing guidelines, while the sentences imposed on counts 2, 3, and 7 were above the aggravated range of the guidelines.

Superior Court of Pennsylvania. Appellant then filed a Statement of Errors Complained of on Appeal ("Statement"), alleging the trial court "imposed a manifestly excessive sentence by imposing consecutive sentences above the aggravated range without properly considering mitigating factors and the rehabilitative needs of the defendant." *See* Statement. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## DISCUSSION

A defendant's right to appeal the discretionary aspects of his sentence is not absolute, and before such a challenge will be heard two requirements must be met. *Commonwealth v. Fiascki,* 886 A.2d 261, 263 (Pa. Super. 2005). First, an appellant must set forth a concise statement of the reasons relied upon for allowance of appeal with regard to the discretionary aspects of a sentence. *Id.*; Pa.R.A.P. 2119(f). Second, the appellant must show there is "a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Fiascki,* 886 A.2d at 263 (quoting *Commonwealth v. Bishop,* 831 A.2d 656, 660 (Pa. Super. 2003)); 42 Pa.C.S.A. § 9781(b).

To establish the existence of a substantial question, an appellant must show that the actions taken by the sentencing court are inconsistent with the sentencing code, contrary to the fundamental norms that underlie the sentencing process, or violate application of the sentencing guidelines. *Fiascki,* 886 A.2d at 263-64. That is, "a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider [the] general guidelines provided by the legislature." *Commonwealth v. Mouzon,* 812 A.2d 617, 622 (Pa. 2002) (quoting *Commonwealth v. Koehler,* 737 A.2d 225, 244 (Pa. 1999)). "A bald allegation of excessiveness will not suffice" to establish a substantial question. *Fiascki,* 886 A.2d at 263.

3

In the present case, Appellant has timely filed a Statement which sets forth the reasons relied upon for allowance of appeal with respect to the discretionary aspect of his sentence. *See* Statement. Therefore, the court will presume for purposes of this appeal that Appellant will likewise satisfy the requirements of Pa.R.A.P. 2119(f) by filing a separate concise statement with the Superior Court of Pennsylvania.

As to the second requirement, Appellant must show there is a substantial question the sentence imposed is not appropriate under the sentencing code. In his Statement, Appellant has averred that consecutive sentences above the aggravated range of the sentencing guidelines on three of the seven counts were manifestly excessive, without properly considering mitigating factors and the rehabilitative needs of Appellant.

When a sentence falls within the standard range of the sentencing guidelines, "'[the Superior Court] has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.'" *Commonwealth v. Matroni*, 923 A.2d 444, 455 (Pa. Super. 2007) (quoting *Commonwealth v. Bullock*, 868 A.2d 516, 529 (Pa. Super. 2005)). However, Appellant's sentence on three counts was above the aggravated range of the sentencing guidelines, and a "claim that the court erred by imposing an aggravated range sentence without consideration of mitigating circumstances raises a substantial question." *Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa. Super. 2003). Therefore, the court will address Appellant's claim on the merits.

When determining an appropriate sentence, the court is required to consider a defendant's character, prior criminal record, age, personal characteristics, potential for rehabilitation, and particular circumstances of the offense. *Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.

4

Super. 2005). The goal of the sentencing code is to ensure that "'the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" *Mouzon,* 812 A.2d at 620 (quoting 42 Pa.C.S.A. § 9721(b)).

If the sentencing court takes into consideration information contained within a pre-sentence investigation report, the Superior Court has noted:

> Since the sentencing court had and considered a presentence report, this fact alone was adequate to support the sentence, and due to the court's explicit reliance on that report, we are required to presume that the court properly weighed the mitigating factors present in the case. . . where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Fowler,* 893 A.2d 758, 766-67 (Pa. Super. 2006) (quoting *Commonwealth v. Boyer,* 856 A.2d 149, 154 (Pa. Super. 2004)) (citation omitted).

The general standard of review when considering a challenge to the discretionary aspects of a court's sentence has been established by the Superior Court as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Hyland,* 875 A.2d at 1184 (quoting *Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa. Super. 1999)).

In discussing the rationale behind such broad discretion to the sentencing court and the deferential standard of appellate review, the Pennsylvania Supreme Court has stated:

> [T]he sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. . . . Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

*Commonwealth v. Walls*, 926 A.2d 957, 961-62 (Pa. 2007). The Supreme Court noted that the sentencing court is in a superior position to "'view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime.'" *Id.* at 961 (quoting *Commonwealth v. Jones*, 613 A.2d 587, 591 (Pa. Super. 1992)).

When reviewing a challenge to the discretionary aspects of a sentence, the appellate court should affirm the trial court's sentence unless it finds: "(1) that the guidelines were erroneously applied; (2) that the sentence, even though within the guidelines, is 'clearly unreasonable'; or (3) that the sentence, if outside the guidelines, is 'unreasonable.'" *Fiascki*, 886 A.2d at 263; 42 Pa.C.S.A. § 9781(c). To determine if a sentence is unreasonable, appellate courts must consider the circumstances of the offense, background and characteristics of the defendant, opportunity of the trial court to observe the defendant, the trial court's review of any presentence investigation, findings upon which the sentence was based, and sentencing guidelines promulgated by the Sentencing Commission. *Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992); 42 Pa.C.S.A. § 9781(d). In *Walls, supra*, the Supreme Court declined to define "unreasonableness," but stated "we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently . . . especially when the unreasonableness inquiry is conducted using the proper standard of review." *Walls*, 926 A.2d at 964.

6

As to sentencing guidelines, the Supreme Court stated:

> the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors - they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

*Walls*, 926 A.2d at 964-65. There is no requirement that courts sentence to the minimum confinement. *Id.* at 965. Rather, "trial courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the Guidelines." *Mouzon,* 812 A.2d at 621.

In *Commonwealth v. Warren,* 84 A.3d 1092 (Pa. Super. 2014), the Superior Court held that a sentencing court may depart from the sentencing guidelines if necessary to fashion a sentence which takes into account protection of the public, rehabilitative needs of the defendant, and gravity of the particular offense as it relates to impact on the life of the victim or the community. *Id.* at 1097. In *Commonwealth v. Crork*, 966 A.2d 585 (Pa. Super. 2009), the trial court's imposition of a sentence above the aggravated range of the sentencing guidelines was not manifestly unreasonable when the court considered the defendant's prior criminal record, seriousness of the offense, the young age of the victim, the impact of the crime on the victim, the defendant's own age, health, intelligence and maturity level, his work history, and his unsuccessful attempts at rehabilitation. *Id.* at 590-91.

In the case *sub judice*, the sentencing court confirmed prior to imposing sentence that all information contained in the PSI was accurate. (N.T.S. at 2-3). The court then relied heavily on that information before imposing sentence. *Id.* at 3-30. Thus, there is a presumption that the court was aware of and properly weighed all relevant information regarding Appellant's character, rehabilitative needs, and mitigating circumstances. *See Fowler.*

7

Appellant claims in his Statement that the court did not properly consider his age as a mitigating factor at sentencing. *See* Statement. However, the court noted at sentencing that Appellant was 24 years of age when these offenses occurred, an age of sufficient maturity to understand the significance of his acts. (N.T.S. at 27). Appellant further claims in his Statement the court did not properly consider his mental health history as a mitigating factor. *See* Statement. However, the court did consider a psychiatric evaluation performed on Appellant in 2003, when he was 13 years of age, which stated he was showing severe aggressive behavior, threatening to kill people, and he was a danger to himself and others. (N.T.S. at 25-26). The court also reviewed a psychological evaluation performed in 2005 which provided a diagnosis of ADHD, Oppositional/Defiant Disorder, and mild mental retardation. *Id.*

Appellant's level of education was discussed. (N.T.S. at 27). Although he left school in the 7th grade, there was nothing to indicate a lack of intellectual ability that would prevent Appellant from understanding the significance of his acts or the difference between right and wrong. *Id.* The court also considered the character and history of Appellant as disclosed in the PSI, and by observing Appellant when he appeared before the court for the trial, subsequent guilty plea, and sentencing. *Id.*

Appellant's history of substance abuse was considered by the court. (N.T.S. at 26). Appellant reported the daily use of marijuana in 2013, the use of cocaine for one year, and drinking every day until he was able to stop. *Id.*

The PSI disclosed that Appellant was adjudicated delinquent for theft in 2003, he violated probation in 2004, and he was found delinquent for felony theft in 2005. (N.T.S. at 27-28). Appellant also had prior adult convictions for disorderly conduct and possession of marijuana in

8

2008, as well as felony criminal trespass and possession of marijuana in 2009. *Id.* at 28. As noted, this was at least the sixth time Appellant had appeared before the court since 2003 for a new crime or probation violation. *Id.*

The Court gave serious consideration to the gravity of the offenses as described by the prosecutor at the time of the guilty plea. (N.T.S. at 28-29). As noted by the prosecutor:

> Between November of 2013 and April of 2014, the defendant did use a battery powered stun gun-style device to deliver an electric shock to his ex-girlfriend, Heather Orlando, approximately 20 to 30 times, causing numerous marks and scars on her body.
>
> He did place a belt around her neck, choking her with the belt, causing her to have trouble breathing, causing dizziness and blacking out.
>
> He did possess that stun gun for an unlawful purpose of engaging in the simple assault. He did, on numerous occasions during the course of the relationship, threaten to kill Ms. Orlando. He choked her, stated he was going to - - he pointed a gun at her, stating he was going to blow her and the kids' heads off and his own. He stated on numerous times he was going to kill her and her family, including his own family.
>
> He did, in an attempt to put her in fear of imminent serious bodily injury, point a handgun at her at her head. This was done because he believed she was cheating on him and wanted her to tell another friend that she had cheated on him.
>
> He did, over the past several years, multiple times a day hit and punch the victim, causing bodily injury. And all of those things, the stun gun, the belt, the punching, kicking and the pointing of a gun was over a period of time, was a course of conduct which intended to either put her in fear of bodily injury, cause bodily injury, or cause her emotional distress.

(N.T.G.P. at 63-64). Thereafter, Appellant admitted he committed these crimes. *Id.* at 64-65.

The court also considered the impact these crimes had on the victim. At sentencing, a five-minute audio recording made by Appellant was played for the court, where Appellant could be heard beating the victim in the presence of their children and threatening to kill her. (N.T.S.

9

at 4-7). This was just one snippet of recordings that totaled hours of abuse. *Id.* at 7. According to the prosecutor, Appellant would turn up the music when he was beating the victim so other people could not hear her crying or yelling, and this could be heard on the audio. *Id.*

The prosecuting officer described in detail the conduct of Appellant towards the victim, and the resulting impact. (N.T.S. at 8-12). As noted by the detective, Appellant "became controlling and tried to control every single aspect of her life." *Id.* at 8. "This need for control continued to escalate, and [Appellant] began becoming physically violent towards her." *Id.* at 9. The detective reviewed recorded files on Appellant's cellular phone which corroborated the victim and provided a "horrifying glimpse into the daily hell that Heather endured over her years' long relationship with [Appellant]." *Id.* at 10. In asking for the stiffest punishment possible, the fourteen-year veteran of the Lancaster City Bureau of Police stated:

> I've worked hundreds of investigations involving some of the most heinous offenses against both adult and child victims. I have heard witness statements and victim statements of terrible things that have happened to innocent victims, but listening to these recordings for hours and, essentially, witnessing firsthand the abuse Heather had to endure was hard for me to stomach. The pain, both physical and emotional, that Heather went through on a daily basis are beyond what any person should have to bear.

> There are things from investigations that I will never be able to forget. Things that have happened to victims that will never leave me, and I will never be able to forget what I heard on these recordings. Heather's repeated pleas for help and ongoing abuse that [Appellant] mercilessly tortured her with are etched in my memory forever. I cannot imagine the daily horror that Heather had to go through living with [Appellant].

> I do not say this lightly, but I am surprised that this was not a homicide investigation and believe if we had not become involved at some point, it would have been.

(N.T.S. at 10-12). This court agreed, finding Appellant's conduct to be "vicious, callous, sadistic, incomprehensible." *Id.* at 29.

10

The victim's mother spoke at sentencing, stating that for five years she did not get to see or speak to her daughter even though they lived only 15 minutes apart because of Appellant's control over the victim. (N.T.S. at 12-14). As stated by the witness, "I finally got to a point where I thought I'd never see her again, until I get that phone call saying that your daughter's in the hospital or come to the morgue, because I didn't think I would ever see her again." *Id.* at 13.

The court considered comments of Appellant and his counsel. (N.T.S. at 26). Appellant gave a rambling statement that showed no remorse, but rather an indifference to the crimes he committed. *Id.* at 16-22. Seeking to clarify his conduct, Appellant stated "I never punched her. It was only smacking." *Id.* at 18. While admitting he tightened a belt around her neck, Appellant claimed he did so to scare the victim because she was trying to kill herself with the belt. *Id.* at 19. Appellant discussed "three conditions that we had; never cheat on me, never lie to me, and never stop loving me, point-blank." *Id.* at 20. Appellant then discussed the rules he imposed on the victim because she was "walking around with booty shorts calling around on the street." *Id.* During a subsequent colloquy with the court, Appellant stated the following:

| | |
|---|---|
| THE COURT: | It is very clear from the audio that you threatened to kill her; wouldn't you agree? |
| APPELLANT: | Yes, I'll agree. |
| THE COURT: | And it was very clear from the audio that you were hitting her; wouldn't you agree? |
| APPELLANT: | Yes, but I wasn't like - - like, hitting her to the point to kill her, no. |
| THE COURT: | I understand that, and you weren't charged with attempted murder. But it was clear you were hitting her. And I also heard a baby crying while that was happening. |

11

APPELLANT: Yeah. Yeah, my son was there.

THE COURT: So apparently you were doing it in the presence of at least one child, and you stand her and tell me you never did it in front of the kids.[3]

(N.T.S. at 23). Appellant also admitted to using a stun gun on the victim, but denied leaving any marks on her. *Id.* at 23-24. This was refuted by the detective, who had photographs showing marks on the victim that were caused by the stun gun. *Id.* at 24.

The court considered rehabilitative needs of Appellant, including the fact that there was little to indicate he had made any attempt to change his lifestyle since committing crimes starting at the age of fourteen. (N.T.S. at 28). Prior attempts at rehabilitation had failed, and the court found Appellant was not amenable to treatment or rehabilitation. *Id.* at 29.

Finally, the court considered the penalties authorized by the Pennsylvania legislature for the crimes committed, the guidelines of the sentencing code, and guidelines established by the Pennsylvania sentencing commission. (N.T.S. at 26-27).

Pursuant to 42 Pa.C.S.A. §9725, and after considering all listed factors, the court found that a sentence of total confinement was necessary because there was an undue risk Appellant would commit another crime during a period of probation or partial confinement. (N.T.S. at 29). Furthermore, Appellant had demonstrated he is not amenable to rehabilitation, he is in need of correctional treatment that can be provided most effectively by his commitment to an institution, he is a danger to society, and society needs to be protected. *Id.*

Additionally, the court identified on the record specific aggravating circumstances that supported a sentence above the standard range of the sentencing guidelines. (N.T.S. at 29-30).

---

[3] Appellant previously stated they had never argued or fought in front of the kids. (N.T.S. at 21).

12

In addition to the factors previously stated, the court specifically noted the brutality of these vicious criminal attacks by Appellant and the fact that they were not isolated incidents. *Id.* Essentially, the court found that Appellant had tortured his victim over a period of three years causing bruises, scarring, and severe emotional trauma. *Id.* at 30. The court also referenced the chilling audio recording made by Appellant, questioning how any human being could possibly record themselves inflicting pain on another individual. *Id.* at 24-25, 30.

Moreover, the court imposed consecutive sentences on three counts, for which Appellant objects. "[A] bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). As the Superior Court stated in *Commonwealth v. Caldwell*, 117 A.3d 763 (Pa. Super. 2015):

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Id.* at 769 (citations and quotations omitted); *see also Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010) (declining to find a substantial question based on excessive sentence claim).

In *Commonwealth v. Treadway*, 104 A.3d 597 (Pa. Super. 2014), the Superior Court held that the appellant did not raise a substantial question for an aggregate sentence of 100-200 years of imprisonment given the gravity of the offenses, impact on the victim, appellant's failure to be rehabilitated after a prior conviction, and the need to protect the public. *Id.* at 600. Conversely, in *Caldwell, supra*, the Superior Court held that the appellant did present a substantial question where he challenged his consecutive sentences as unduly excessive and claimed the court failed

13

to consider his rehabilitative needs. 117 A.3d at 770; *see also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Moreover, in *Dodge, supra*, the defendant set forth a substantial question for review by claiming the imposition of consecutive sentences was disproportionate to his crimes. *Id.* at 1271-73. However, the Superior Court in *Dodge* recognized that "this Court's determination of whether an appellant has presented a substantial question in various cases has been less than a model of clarity and consistency. . . .". 77 A.3d 1272, n.8.

In this case, Appellant has alleged the court imposed consecutive sentences without considering his mitigating factors and rehabilitative needs. Therefore, while not conceding a substantial question, the court will address the merits of this issue pursuant to *Caldwell*.

The sentencing judge may determine whether a sentence should run consecutive to or concurrent with another sentence being imposed based on the facts of a particular case. *Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013); *see also* 42 Pa.C.S.A. §9721. Imposition of consecutive rather than concurrent sentences rests within the trial court's discretion. *Commonwealth v. Harvard*, 64 A.3d 690, 703 (Pa. Super. 2013).

In *Commonwealth v. Mouzon*, 828 A.2d 1126 (Pa. Super. 2003), the Superior Court held that a sentencing court has discretion to not only deviate from sentencing guideline ranges, but also to run sentences consecutive to one another. *Id.* at 1130. Thus, the Court found in *Mouzon* that sentences which were above the guideline range and were made consecutive to one another were not manifestly excessive where the aggregate sentence was equal to the significant amount of crime committed by the defendant, the sentencing court witnessed the defendant throughout the proceedings, the court studied the defendant's history, and the court considered the defendant's prospective rehabilitation. *Id.* at 1130-31.

14

In the present case, the aggregate sentence imposed was equal to the significant amount of brutal crimes committed by Appellant over a period of years. The court had an opportunity to review Appellant's conduct, listen to an audio-tape of Appellant actually beating the victim, and witness his lack of remorse. The court studied Appellant's history as disclosed in the PSI. Moreover, the court considered Appellant's poor prospects for treatment or rehabilitation. Thus, as in *Mouzon*, the consecutive sentences were not manifestly excessive.

## CONCLUSION

Pennsylvania sentencing guidelines are purely advisory, and in the present case they served as a starting point for recommended minimum sentences. However, after considering the circumstances of these horrendous crimes, which occurred over a period of several years, and the impact those crimes had on the victim, the court found that aggravating circumstances far outweighed any mitigating factors or rehabilitative needs offered by Appellant. Moreover, the circumstances warranted consecutive sentences on three of the seven counts, so Appellant would not be afforded a "volume discount" for his multiple crimes. For these reasons, Appellant's sentence was not manifestly excessive or unreasonable and the sentence should be affirmed.

BY THE COURT

_____April 11, 2017_____
DATE

DONALD R. TOTARO, JUDGE

ATTEST:

Copies:  Karen L. Mansfield, Esquire, Assistant District Attorney
         Christopher P. Lyden, Esquire, Attorney for Appellant

15